UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


| | | |
|---|---|---|
| SHIRLEY F. BAILEY | ) | |
| | ) | |
| v. | ) | NO. 2:04-CV-325 |
| | ) | |
| JO ANNE B. BARNHARDT, | ) | |
| Commissioner of Social Security | ) | |

## **MEMORANDUM OPINION**

The plaintiff Shirley F. Bailey has filed a motion for summary judgment on her complaint to obtain judicial review of the final decision of the defendant Commissioner of Social Security Jo Anne B. Barnhardt to deny her application for supplemental security income under the Social Security Act. The defendant also has filed a motion for summary judgment.

Ms. Bailey was born in 1976 and was 27 years old at the time of her second administrative hearing. [Tr. 19, 54]. She completed tenth grade and has no relevant past work experience. [Tr. 19, 55]. Ms. Bailey alleges she is disabled as of May 15, 2000, from Bell's Palsy, the residual effects of a stroke, and heart, nerve, and depressive disorders. [Tr. 19, 81]. Based upon a finding that her impairments were severe, but not severe enough, the Administrative Law Judge [ALJ] found that Ms.

Bailey was not disabled as defined by the Social Security Act. [Tr. 21].

In May 2000, Ms. Bailey was diagnosed with a recurrence of Bell's Palsy. [Tr. 369]. A few days later, Ms. Bailey reported feeling better from her symptoms. [Tr. 368]. There is not another mention of Bell's Palsy in her medical records.

That same month, Ms. Bailey underwent an echocardiogram looking for the cause of her fainting episodes. [Tr. 354-55]. The examination was "basically normal." [Tr. 353]. During a follow-up visit later in May, Ms. Bailey's blood pressure and heart rate were stable during an examination. [Tr. 348]. Her doctor indicated her condition might be caused by medication side effects. [Tr. 349].

In June 2000, H. Abraham Brietstein, Ph.D., evaluated Ms. Bailey in connection with her application for disability benefits. [Tr. 310-13]. The doctor indicated Ms. Bailey had some intellectual limitations and found her intelligence to be in the borderline range. [Tr. 312]. He found Ms. Bailey would not have difficulty sustaining her attention and concentration or understanding and retaining instructions, so long as they were not overly complex. [*Id.*]. Overall, the doctor commented that Ms. Bailey was aware of what was hazardous to her and could perform daily tasks within her limitations. [Tr. 313].

Later that same month, another psychiatrist reviewed the record in connection with Ms. Bailey's application for disability benefits. [Tr. 314-17]. The doctor found

2

Ms. Bailey could understand and remember short and simple instructions, concentrate and complete simple and some detailed tasks within a timely manner, interact within a work-like setting with some difficulty interacting with the general public, and adapt to changes and situations within a simple work-like setting. [Tr. 316].

In July 2000, Ms. Bailey again complained of fainting episodes. [Tr. 346]. Her doctor again noted that all of her testing failed to indicate a cause or any abnormalities. [*Id*.]. In an attempt to find the cause of the fainting, Ms. Bailey was fitted with a recorder underneath her skin that would closely monitor her heart rate and heart rhythm. [Tr. 344]. By September 2000, there had been no automatic detections of arrhythmia. [Tr. 343].

In September 2000, Dr. Sarada Misra evaluated Ms. Bailey in connection with her application for disability benefits. [Tr. 327-29]. The doctor could not determine a cause of Ms. Bailey's fainting episodes. [Tr. 329].

That same month, Dr. James Moore reviewed the medical evidence in connection with Ms. Bailey's application for disability benefits. [Tr. 331-38]. He did not assign her any exertional, postural, manipulative, visual, or communicative limitations. [Tr. 332-35]. The doctor did find her exposure to hazards, even just moderate exposure, should be limited. [Tr. 335].

In November 2000, Ms. Bailey was instructed to begin a salt and water loading

3

program in order to help prevent her fainting episodes. [Tr. 340].

In May 2001, Ms. Bailey was evaluated at Ridgeview Psychiatric Hospital and Center [Ridgeview] for complaints of depression and being overwhelmed. [Tr. 436]. Her Global Assessment of Functioning [GAF] score was 52.[1]

In June 2001, Ridgeview prescribed two anti-depressants for Ms. Bailey. [Tr. 477-78].

At Ms. Bailey's first administrative hearing held on July 31, 2001, the testimony of Ms. Bailey and vocational expert Michael Galloway was received into evidence. [Tr. 54-74]. Ms. Bailey testified she last worked at Wal-Mart in May 2000. [Tr. 55]. She described some of the problems she had been having with her health to include mitral valve prolapse, tachycardia, and syncope. [Tr. 57]. The syncope episodes during which she passes out had been occurring since 1995 and have progressively gotten worse. [*Id.*]. Ms. Bailey also described problems with her "nerves," including not being able to sleep at night, irritability, and crying spells. [Tr. 59].

Vocational expert Michael Galloway testified next. [Tr. 69-74]. He testified Ms. Bailey's previous work as a bus monitor was medium and unskilled and as a

---

[1] According to the *Diagnostic and Statistical Manual of Mental Disorders*, 4th ed., a GAF of 52 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.

cashier was light and unskilled. [Tr. 71, 72].

In November 2001, Ms. Bailey was admitted to the hospital following an intentional overdose of anti-depressant medication. [Tr. 140-41]. Following a prescription for medication and referral to a doctor, Ms. Bailey was discharged with a comment that she was not "a threat to herself." [Tr. 141].

In May 2002, the recorder underneath Ms. Bailey's skin continued to show no significant findings. [Tr. 144]. The doctor recommended she continue her medication regime, as she usually did not have fainting episodes when properly medicated. [*Id.*].

In September 2002, the Appeals Council [AC] remanded the case to the Commissioner with orders that the ALJ needed to further evaluate Ms. Bailey's mental status and, if he found it so warranted, obtain supplemental evidence from a vocational expert. [Tr. 122, 123].

In February 2003, Kathryn Smith, Ph.D., evaluated Ms. Bailey in connection with her application for disability benefits. [Tr. 133-39]. The doctor somewhat discounted the results of an IQ test given Ms. Bailey because she had a cold. [Tr. 133]. Dr. Smith placed Ms. Bailey's intellectual functioning in the borderline to low average range. [Tr. 136]. Ms. Bailey was found to have the intellectual potential for simple work, but she might be functioning below her potential given her anxiety and

5

depression. [Tr. 137].

Ms. Bailey had a supplemental administrative hearing on June 24, 2003, at which her testimony was received into evidence. [Tr. 81-105]. Ms. Bailey testified she had been treated for depression recently, but she stopped going to her appointments in June 2001 because she did not have anyone to watch her children. [Tr. 83-84]. In November 2001, Ms. Bailey attempted suicide. [Tr. 84]. She continued to have anxiety attacks and dizzy spells. [Tr. 90-91, 96]. Since her last administrative hearing, Ms. Bailey's legs had been hurting her. [Tr. 101].

The ALJ ruled on remand from the AC that Ms. Bailey was not disabled because her impairments were severe, but not severe enough. [Tr. 21]. He also found she retained the residual functional capacity [RFC] to perform light work, subject to any mental limitations that were imposed, as well as height and moving machinery limitations. [Tr. 19, 22]. The ALJ then concluded that there were jobs existing in significant numbers in the national economy which Ms. Bailey would be able to perform. [Tr. 24].

This court must affirm an ALJ's conclusions unless the ALJ applied incorrect legal standards or made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405g. "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v.*

6

Case 2:04-cv-00325 Document 16 Filed 06/16/05 Page 6 of 10 PageID #: 27

*Perales*, 402 U.S. 389, 401 (1971). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Accordingly, this court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

Ms. Bailey requests summary judgment and claims the ALJ failed to comply with the AC's remand order. According to that September 21, 2002, order, the ALJ needed to further evaluate Ms. Bailey's mental status. [Tr. 122]. In addition, if he found it so warranted, the AC indicated the ALJ should obtain supplemental evidence from a vocational expert. [Tr. 123].

In the decision that followed the remand, the ALJ found that Ms. Bailey had a severe affective/mood disorder as well as a severe limited intellectual functioning impairment. [Tr. 20, 21]. In reaching that decision, the ALJ considered Ms. Bailey's suicide attempt in November 2001, reports from a psychological examiner from February 2003, and her own testimony. [*Id*.]. The ALJ noted there was no evidence of mental retardation in the medical evidence of record. [Tr. 21]. In addition, Ms. Bailey's testimony that she was able to drive, provide child care, pay bills, complete light household chores, watch television, and attend church all belied suggestions of

7

mental retardation, according to the ALJ. [Tr. 22]. In conclusion, the ALJ noted that Ms. Bailey "has experienced no extended episodes of mental deterioration or decompensation in any settings, and she is able to function adequately outside of a highly supportive setting." [*Id.*]. The ALJ adequately evaluated Ms. Bailey's mental status, as directed by the AC.

The AC also directed the ALJ to consult a vocational expert, if it was warranted. [Tr. 123]. The ALJ decided this was not warranted, and this court will not disturb his discretionary decision.

Ms. Bailey also asserts the ALJ erred in failing to find that her anxiety, panic disorder, and insomnia were severe impairments. Regarding her anxiety and panic disorder, Ms. Bailey only complained twice (May 2001 and June 2001) of these problems. [Tr. 436-37, 477-78]. There was certainly no on-going treatment or diagnosis of anxiety and a panic disorder. In addition, the medical evidence of record is almost void of any complaints of insomnia. Ms. Bailey never complained to a medical professional of insomnia. The ALJ did not err in failing to find Ms. Bailey had severe anxiety, panic disorder, and insomnia.

Next, Ms. Bailey claims the ALJ failed to establish that there is other work in the national economy that she can perform. Using the Medical-Vocational Guidelines [Guidelines], the ALJ indicated that there were jobs, "existing in significant numbers

8

in the national economy" which Ms. Bailey could perform. [Tr. 24]. Under the Guidelines, if a person can perform all of the seven primary strengths of a given level of exertion, findings of non-disability and that occupations exist in the national economy are directed. The ALJ then found Ms. Bailey could perform all of the requirements of light level exertional work. [*Id.*]. There is no evidence in the record to dissuade this court from accepting that determination. Since Ms. Bailey could perform all levels of light work, the ALJ was bound to find her non-disabled and to find that significant employment existed in the national economy. As such, his decision was made with substantial evidence.

 Finally, Ms. Bailey asserts, in the alternative, that her case should be remanded to the Commissioner pursuant to the sixth sentence of 42 U.S.C. § 405(g) for the consideration of new evidence. This court may remand the case to the Commissioner upon a showing by Ms. Bailey that this new evidence is material to her case and that there was good cause for her failure to include this evidence earlier. 42 U.S.C. § 405 (g). Evidence is new only when it was not in existence *and* not available prior to an ALJ's decision. *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990). Evidence is material if there is a reasonable probability the ALJ would have reached a different decision had the additional evidence been presented. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

This new evidence consists of medical records from Ridgeview from the time period of August 2001 to April 2004. [Tr. 514-40]. The records from August and November 2001 are not new because they were in existence prior to the ALJ's decision. [Tr. 534-40]. The records from October and November 2003 are not material. [Tr. 517-34]. The records indicate Ms. Bailey missed three appointments, had good verbal skills, good intellectual ability, good social skills, was open to learning new behaviors, and refused individual counseling. [Tr. 519, 520, 521, 526, 531.] Such findings are not likely to have changed the ALJ's decision. The last piece of evidence is from April 2004 and indicates Ms. Bailey was discharged from therapy. [Tr. 514]. Again, this evidence is not material.

Accordingly, Ms. Bailey's motion for summary judgment will be denied, the defendant's motion for summary judgment will be granted, and this action will be dismissed.

An appropriate order will follow.

ENTER:

    s/Thomas Gray Hull
THOMAS GRAY HULL
  SENIOR U. S. DISTRICT JUDGE